## Case No. 2,788.

The CLARA.

The CLARA CLARITA.

[5 Ben. 375.][1]

District Court, S. D. New York. Nov., 1871.[2]

COLLISION—SALVAGE—TOWING A VESSEL ON FIRE AGAINST VESSEL AT ANCHOR — INEVITABLE ACCIDENT.

1. A ferry-boat, lying at a dock, caught fire at night. A tug went to her assistance, and, after having in vain attempted to put out the fire, she, at the request of those in charge of the ferry-boat, who feared the spread of the fire, towed the ferry-boat out into the stream by a hempen hawser, for the purpose of taking her to where she could be beached. The hawser burned off twice, the ferry-boat drifting each time. The second time, before the tug could prevent it, she drifted against the bows of a schooner, and set her on fire. The tug, fastening to the ferry-boat again, pulled her away, and towed her till she sank, and then returned to the schooner and rendered her assistance in putting out the fire on board of her. The schooner was lying at anchor in a usual place, having no anchor-watch on deck, and it appeared that it was not usual to keep an anchor-watch upon vessels so anchored, except in cases of fog or storm. The owners of the tug claimed to recover salvage from the schooner, and the owners of the schooner claimed to recover damages from the tug for the setting of the schooner on fire. Held, that, the schooner being at anchor in a proper place, the burden of proof was on the tug to prove that she was not in fault in towing the ferry-boat against the schooner, and none the less so, because the ferry-boat was on fire.

[Cited in Southwestern Transp. Co. v. Pittsburg Coal Co., 42 Fed. 920.]

[See note at end of case.]

2. That the action of the tug, in towing the ferry-boat away from the dock, was not within the rule which authorizes one, in case of necessity, to destroy another's property, in order to prevent the spread of a fire.

[Followed in The Chickasaw, 38 Fed. 361, 362.]

[See note at end of case.]

3. That the towing of the ferry-boat out by a hempen hawser, which was likely to burn off and let her drift, was an act of negligence on the part of the tug.

[Followed in The Chickasaw, 38 Fed. 361, 362.]

[See note at end of case.]

4. That the drifting of the ferry-boat against the schooner was not an inevitable accident, but was the result of negligence on the part of the tug, and the latter, therefore, was not entitled to recover salvage.

[See note at end of case.]

5. That the schooner was without fault, and was entitled to recover her damages.

[Cited in The Fremont, Case No. 5,094.]

[See note at end of case.]

[In admiralty. Libels by the New York Harbor Protection Company, owner of the steamtug Clara Clarita, against the schooner Clara to recover for services rendered in ex-

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[2] [Affirmed by circuit court in Case No. 2,789, and by supreme court in The Clarita and The Clara, 23 Wall. (90 U. S.) 1.]

tinguishing a fire, and by Augustus M. Cox and others, owners of the schooner, against the tug to recover the damages caused by the fire.]

Cornelius Van Santvoord, for steamtug.
Edward H. Owen, for schooner.

BLATCHFORD, District Judge. These are two causes heard together. The libel in the first above entitled cause is filed by the owners of the steamtug Clara Clarita, to recover a salvage compensation for services rendered to the schooner Clara, in extinguishing a fire on board of her. The libellants are a corporation, and the libel is filed on behalf of the libellants and of all others entitled. The substance of the libel is, that, on the evening of the 1st of August, 1870, a fire broke out on board of the ferry-boat James Watt, lying in a slip on the New Jersey shore, opposite the city of New York; that the steamtug proceeded to the ferry-boat, and, at the request of those in charge of the ferry-boat, endeavored, by the use of the hose and steam pumps of the steamtug, to extinguish the fire, but without success; that, when this was apparent to those in charge of the ferry-boat, they, fearing that the fire would spread to the adjoining wharves and to other vessels, requested the master of the steamtug to take the ferry-boat in tow, and drag her out of the slip, for the purpose of beaching her in some place where, even if she could not be saved herself, she would be prevented from causing damage and danger to others; that, in compliance with such request, and under the employment of those in charge of the ferry-boat, the master and crew of the steamtug made fast a hawser to the ferry-boat, and dragged her clear of the slip, and started with her on the way to Hoboken flats, about a quarter of a mile distant; that, when she started, the flames were chiefly confined to the hold of the ferry-boat, and there was every reason to believe that she could be successfully towed to and beached upon the flats; that, as the wind and tide were setting up the river, the steamtug made all haste, with their aid, towards the nearest place of safety, but the flames suddenly broke out in all parts of the ferry-boat, and the hawser by which she was being towed was burned off, and she swung adrift; that she was then taken in tow again by another hawser, but that also was soon burned away, and she drifted off a second time, and in spite of all efforts that could be used to prevent it, and, without any fault or negligence on the part of the master and crew of the steamtug, drifted, under the impulse of the wind and tide, against and upon the schooner, which was lying at anchor; that another hawser was made fast to the ferry-boat, as soon as it could be done, and she was finally dragged clear of the schooner, but not before the schooner had caught fire from the burning ferry-boat; that the ferry-boat, soon afterwards, sank in the river; that, after that, the master and crew of the steamtug immediately turned their attention to the schooner, which was then burning fiercely from her foremast forward to and including her bowsprit and all her head sails; that the steamtug was brought alongside of her, and made fast to her, and two or more streams of water, through hose, were brought to bear on the flames; and that, by the use of the apparatus of the steam tug, after three or four hours of exertion on the part of her master and crew, during which they were exposed to great danger and hardship, the flames were subdued, and the schooner was preserved from entire destruction, and restored, with comparatively trifling damage, to her master and owners. For this service, the libellants claim salvage, alleging the value of the schooner to have been $20,000.

The answer to this libel avers, that it was gross carelessness and negligence on the part of the steamtug to attempt to tow the burning ferry-boat, with the wind and tide as they were, by a hempen hawser, which was liable at any moment to be destroyed, as it was, in fact, by the flames which enveloped the boat; that the libellants had the sole care and management of the burning boat; that, when they undertook and agreed to haul her from her slip around upon the Hoboken flats, and commenced that service, no person remained on board of her, who had been previously connected with her, or who had any power or control over her; that she was, in fact, under the exclusive direction and control of the libellants; that, inasmuch as the libellants voluntarily undertook to tow the burning ferry-boat, they are responsible for all the consequences, and are liable to the claimants for causing her to get foul of and to set on fire the schooner, which was then lawfully and properly lying at anchor in the river; that the libellants are not entitled to salvage for the services rendered; that the schooner would not have been set on fire by the burning ferry-boat, if the libellants had not voluntarily agreed and attempted to tow the burning boat, or if, in doing that, they had exercised proper care; that the schooner was run into and set on fire by the negligence of those in charge of the steamtug, and from no fault or neglect of duty on the part of the schooner; and that the schooner was not set on fire by any accident, but by the sole and culpable fault of those navigating and having charge of the steamtug in towing the burning ferry-boat.

The libel in the second above entitled cause is brought by the owners of the schooner against the steamtug, to recover for the damages caused by the fire. The libel alleges, that, while the schooner was lying at anchor, having the proper light, a white light in the starboard fore rigging, about twenty feet above the deck, she was carelessly and

wrongfully set on fire by the burning ferry-boat, which the steamtug had been, and was, attempting to tow; that the night was clear, and the tide flood; that the steamtug, when first discovered by those on board of the schooner, was in dangerous proximity to the schooner, although there was abundant sea room on all sides, and was wrongfully attempting to take the burning boat across the schooner's bows; that the burning boat, over which the steamtug had the exclusive and entire control, was wrongfully towed against, and permitted to strike, the bows of the schooner, where she hung for some time, setting fire to her; and that such collision and fire were caused solely through the fault and negligence of those navigating the steamtug, in that she had no competent lookout, properly stationed, and faithfully attending to his duties, and was negligently navigated, in that she attempted to cross the schooner's bows, when in such close proximity to her as to endanger her safety, and not through any fault on the part of those in charge of the schooner.

The answer of the owners of the steamtug sets up the same matters, in substance, that are contained in the libel filed by them against the schooner, with the variation, that it avers, that, after the hawser to the ferry-boat had been twice burned away, it was again made fast, but the fastening pulled out or gave way, and afterwards, and before it could be again made fast, the ferry-boat drifted against the schooner. It also alleges, that, when the ferry-boat broke loose the last time, the schooner was a considerable distance away from her; that the steamtug was proceeding with all speed, and with every precaution, in a direction away from where the schooner was lying, and diagonally up and across the river, towards the New Jersey shore; that, shortly before or immediately after the ferry-boat got afoul of the schooner, the officers and crew of the schooner deserted her; that the movements of the burning boat were distinctly visible for a great distance; that, if the officers and crew of the schooner had exercised even ordinary precaution, skill or diligence in the management of their vessel, they had ample and sufficient warning of the approaching danger to have easily avoided it; that, if the steamtug was not discovered by those on board of the schooner, until she was in dangerous proximity, it was because of the negligence and want of care and attention on the part of those in charge of the schooner; that the collision or injury was not caused by any negligence on the part of those in charge of the steamtug; and that it was, as far as they were concerned, the result of inevitable accident, the effect of which might, however, have been avoided by proper care on the part of those in charge of the schooner.

The schooner was, on the evidence, at anchor in a proper place, and exhibited the light required by article 7 of the rules concerning lights in the act of April 29, 1864 (13 Stat. 59). Under these circumstances of helplessness on the part of the schooner, the burden is upon the steamtug to show that the steamtug was without fault, or that the schooner was in fault, or that the disaster was the result of inevitable accident. Amoskeag Manuf'g Co. v. The John Adams [Case No. 338]. This duty is incumbent on the steamtug in this case, because she was in the exclusive charge of her own master and crew, and was engaged, on the employment of the ferry-boat, in towing that vessel, which had no master or crew on board. The steamtug was, therefore, responsible for the proper navigation of both herself and the ferry-boat; and those who have suffered damage through any fault of the persons in charge of the steamtug are entitled to look to her for recompense. Sturgis v. Boyer, 24 How. [65 U. S.] 110, 122. Such would have been the rule if the ferry-boat had been under tow, under like circumstances, without being on fire; and the fact that she was on fire when taken in tow cannot alter the rule, as between the schooner and the steamtug, in regard to the burden of proof.

It is contended, on the part of the schooner, that the steamtug, knowing the burning condition of the ferryboat, anticipating that the flames, which were as yet confined to the hold, would ultimately burst forth, because an unsuccessful attempt had been made to reach, with water, the seat of the fire, having in view the object of protecting the wharf, and sheds and buildings and vessels adjacent, from being burned, when the flames should so burst forth, voluntarily, and without any legal compulsion or duty, undertook to tow the ferry-boat, for hire, to a place of safety, the owners of the steamtug having no proprietary interest in the ferry-boat, or in any of the property supposed to be in danger of taking fire; that the steamtug, however properly fitted to tow a ferry-boat that was not on fire, was not furnished with the necessary appliances to tow a burning vessel, so that the work could be done with safety to other vessels; that the fact, that a hempen hawser would be liable to burn off, if, as was anticipated, when the towing was commenced, the flames should burst out from the hold, and that, as a consequence, the ferry-boat would drift with the wind and tide, the direction and force of which were seen and known, and without control, no one being on board of her, and would be liable to come into contact with vessels at anchor, and set them on fire, was obvious, and should have induced either the towing by a chain or the refraining altogether from the towing; and that, however properly, in the actual predicament, the steamtug may have managed the navigation of the ferry-boat, after once getting her clear of the slip, the case is not one of inevitable accident, or absence of fault on the part of the steamtug, because of the original gross

negligence in taking the ferry-boat in tow at all, under the circumstances, with a hempen hawser.

It is impossible to resist the force of these considerations. It was negligence and carelessness on the part of the steamtug, to undertake to tow the burning boat with a hempen hawser; and the fact that the anticipated bursting forth of the flames occurred, and burned off the hawser twice, at least, so that the burning boat drifted against, and set fire to, the schooner, instead of remaining in the slip, and setting fire to something other than the schooner, when the flames burst forth, is not, in the eye of the law, a case of inevitable accident. The Juliet Erskine, 6 Notes of Cas. 633.

The view urged on the part of the steamtug is, that negligence is not predicable of the act of towing the ferry-boat out of the slip, with the ordinary appliances with which the steamtug was furnished, it having been necessary so to do, to prevent the spread of the fire; that any individual may do what is necessary to prevent the spread of a fire, even to the pulling down of buildings, without being responsible, in trespass or otherwise; that such act is, in contemplation of law, one done for the commonwealth, and is, as a ground of exemption from damages, of the same effect as a loss happening by a tempest or other irresistible force; and that the act of towing, being justifiable, carries with it the right to exemption from liability for contingent and unavoidable damage done to other vessels, in the course of the towing.

Without calling in question the well-settled principles, that, at common law, any person, in case of actual necessity, to prevent the spreading of a fire, may prostrate a building in a block or street, without being responsible in trespass or otherwise, that the sufferer, in such case, has no legal redress for the injury, and that, in case of a danger happening by tempest, a passenger in a vessel may, if necessary to save the lives of the passengers, throw overboard the goods of another, without being liable in trespass to their owner, I do not think the present case is brought within these principles. It cannot be held that it was necessary to set this schooner on fire in order to prevent the apprehended spread of the fire if the ferry-boat should be left to burn in the slip, in the sense in which the word "necessity" is understood in the principle of law referred to. The necessity must be a direct one, an obvious one, a necessarily resulting one. In the case of the building, or of the goods in the vessel, the necessity for the sacrifice, as well as the act of sacrifice, must both of them be direct, in reference to the thing sacrificed. There must be no fault, in either substituting a fancied necessity for a real necessity, or in negligently doing what is done, so that the existence of necessity comes to rest only on the fact of sacrifice, when the sacrifice would not have occurred but for the negligence.

In the present case, it was entirely plain, before the towing commenced, that the ordinary hempen hawser would be likely to burn off if the flames should burst out, and it was anticipated that they would burst out. It is not contended, on the part of the steamtug, that, if the hawsers had not successively burned off, she would not have been able to haul the ferry-boat in safety out of the way of the schooner. It must, therefore, be held to have been negligence on the part of the steamtug to tow the ferry-boat at all with a hempen hawser, and the damage done to the schooner cannot be regarded as unavoidable, however properly the steamtug may have managed the navigation after once getting the ferry-boat out into the river. The risk of the burning of the hawsers must be borne by the steamtug and not by the schooner. The steamtug was, therefore, in fault, in allowing the ferry-boat to collide with the schooner and set her on fire, such collision being shown to have been directly the result of towing the burning boat with a hempen hawser.

The next inquiry is, as to whether the schooner was in fault. The only fault alleged against her is, that she had no watch on deck at the time the burning ferry-boat approached her. It is claimed on the part of the steamtug, that, if there had been a competent watch on the deck of the schooner, the approach of, and the danger of collision with, the ferry-boat, would have been observed from the schooner in time for her anchor-chain to have been sheered or slipped, so as to have allowed the ferry-boat to pass by without striking or setting fire to the schooner. The proof in this case is, that the officers and crew of the schooner were on board of her, but were asleep in the cabin, with the exception of one man, who was on deck, but had not been set as a watch, and was probably asleep, and that they were aroused by a shout from the steamtug, and came on deck just before the ferry-boat struck the schooner; and that it is not customary for vessels of the size and character of this schooner to have an anchor-watch on deck in the locality where she was anchored, unless in case of a fog, or of bad weather. There was no fog on this occasion, and the night was clear and fine, the wind moderate, and the tide flood. Nor is it established on the part of the steamtug (and the burden of proof is on her, in this respect), that anything which the schooner could have done, in the way of sheering or slipping her chain, after she could or ought to have reasonably apprehended danger from the ferry-boat, if she had had an anchor-watch, or even if her crew had all of them been on deck, would have avoided the collision and its consequences. Under these circumstances, the schooner was not at all in fault. I do not intend, however, to imply

that there is any rule of law in the admiralty which required this schooner to keep an anchor-watch on the night in question.

As to the claim for salvage, the owners of the steamtug are not entitled to its allowance. The steamtug having, through her own fault, set the schooner on fire, has no claim for salvage for putting out such fire, the service being one rendered for her own benefit, one in which she herself was the most deeply interested, and one which only had the effect to reduce the amount of her liability for damages to the owners of the schooner. The Iola [Case No. 12,279]; Cargo ex Capella, L. R. 1 Adm. & Ecc. 356.

The libel against the schooner must be dismissed, with costs. In the case against the steamtug, there must be a decree for the libellants, with costs, with a reference to a commissioner to ascertain the damages sustained by them.

[NOTE. The Harbor Protection Company appealed from the decree herein to the circuit court, where the same was affirmed. Case No. 2,789, next following.

[From the affirmance, the claimant of the tug appealed to the supreme court, which affirmed the circuit court decree. Mr. Justice Clifford, who delivered the opinion, speaking for the court, holding that the ferry-boat was not liable, as at the time of the injury complained of she was in charge of, and under the control of, the tug, the officers and crew of which were the agents of her owners, and not the agents of the ferry-boat, by reason of the contract for the service having been made with the master of the tug; that the evidence failed to disclose that the injury to the schooner was the result of inevitable accident; that, as the schooner was anchored in a proper place, and had her signal light properly displayed, the burden of proof was on the tug to show that the disaster was caused by the fault of the schooner, or occurred through inevitable accident; and that the evidence failed to show that the schooner did not have a proper anchor-watch, or that the absence of such a watch in any wise contributed to the casualty. The Clarita and The Clara, 23 Wall. (90 U. S.) 1.]